Yes, sir. Good morning, Your Honors. I'm Charles Kelley-Kilgore for the appellant, and if it pleases the Court, I would like to reserve two minutes for rebuttal. Okay. And, Your Honor, two things we would like to discuss this morning. The rulings regarding the denial of the motion for reconsideration, as well as the dismissal with prejudice of the entire case. I know from putting in my moving papers, we were having a hard time getting the Pro Hoc Vitae status. We thought that we were being diligent. We thought that we were putting everything together. I've outlined that in our brief, and simply, by June 30th of 2017, we had not yet been granted the ability to be able to file in the Nevada District Court. We didn't have standing to do so. I did not have a username or a password for that. To address that situation, my law clerk, Steve Urban, took papers and attempted to window-file, but was rebuffed by the clerk. The record on that is very confusing. His declarations were confusing. I can't really figure out exactly what happened. Do you want to explain what you think the record shows in that regard? I do think it's confusing, Your Honor. He went to the window, and I don't recall right now whether he was told that she had counsel of record, which I'm not sure that that would be correct, because we hadn't been granted the Pro Hoc Vitae status yet. But didn't you have a local counsel? We did. And had that person entered their notice of appearance on the case? I believe that they had, Your Honor. So why didn't local counsel file a motion for an extension of time or file anything with the court? I think that was a failing. I believe that was a failing on my part, Your Honor, that I thought that I could get it done. And I did not go to local counsel to do that. Well, you didn't think you could do it. You thought you were to do it because it was done pro se. Is that right? You attempted to file for an extension pro se. That's correct. And then they said you couldn't do it pro se because or maybe they said that. It's really not very clear. Well, then on June 30th, I was still filing or attempting to file to receive the Pro Hoc Vitae status. And one thing that I would note, and I'm not sure it's real clear from my moving papers when I reviewed them, is that we didn't realize when we mailed the documents to the court that they had not been received. So it really was a surprise to us when the dismissal order came down two weeks later on July 13th, and we realized what vote we were in. You mean the person went to try and file it and then went to mail it? Is that what happened? That's correct. But with all that, there were a couple of days between when it wasn't filed. And so your representation is that you mailed it at that point. That's correct, Your Honor. So you didn't do nothing in that interim period. That's our belief, yes. We did not do nothing. As a matter of fact, we felt like we were attempting all along and still trying to get the Pro Hoc Vitae status via the e-filing, which eventually did come about, I believe, on July the 12th. Then the dismissal order was used. Was there a deemed agreement with the motion, or what was it exactly? To tell you the truth, Your Honor, I really don't know. I do think it was a sanction for us not having all of our ducks in a row and not having had the Pro Hoc Vitae status filed correctly at that point in time. Now, the underlying case here seems to me to have major problems. It could very well. And it does — I mean, the whole thing is really — and why this just wasn't resolved in California to begin with, I don't know. Because I guess you didn't file a motion to — in opposition for the transfer. Is that correct? That's correct. I didn't. And I just thought that the motion was well taken. I will say this — Well, I think you filed a motion. You also filed — when you filed a motion to reconsider, there was something where you indicated that it had slipped your mind, and that's why you hadn't filed the motion for an extension of time. Is that accurate? With regard to bringing the case to Nevada in the first instance? Yes. Or back on the — I'm sorry. Your question again? So you failed to file the opposition to the motion to dismiss in California. Correct. And then was there a motion for reconsideration of that ever filed? I'm sorry. I don't recall. I don't think that there was. I thought that all the factors being what they were, that the move to Nevada was inevitable, and I thought that the motion was well taken. I will note, however, that in Opposition Council's moving papers, she referred to us filing in California as forum shopping, and that's simply not the case. I wasn't licensed in Nevada, and I was licensed in California, and that's where the headquarters were, and so that's why California was initially chosen as the forum. So what standards do we apply to this problem, now that we have the facts somewhat articulated? Well, I do think it's abuse of discretion, Your Honor. And I understand that great leadership — Did the district judge discuss or take account of the declaration, which was only filed in the motion to reconsider, I take it, that there was an attempt made to file? I'm sorry. The attempt was to file what? An opposition to the motion to dismiss? That's what it says. But it couldn't have been, because, in fact, the motion — the opposition, once you got the time to file, it wasn't even filed for several days. Apparently, it didn't exist at the time. That's correct. Because we — the papers that — What's correct? That it wasn't an opposition to the motion to dismiss. It was just a motion for — a request for extension of time. The request for extension of time. So to that degree, the paralegal's declaration is incorrect. I'm sorry. Say it again, please. To that degree, the paralegal's declaration is incorrect. You said it was an opposition to the motion to dismiss. It wasn't. I think it was the extension of time. But we have no direct evidence of that. We do not. Okay. Anything else? Only — and I've said this in my moving papers, and I'll just reiterate it very, very briefly, is that I just think that the sanction was extremely harsh. And for that reason, I think the abuse of discretion standard applies. And I do think that this was an abuse of discretion and that Ms. May's suit should go forward. Thank you, Your Honors. Thank you. Good morning, Your Honors. Debra Christensen from Jackson Lewis. I represent the appellees and that includes smart final stores, as well as the individually named defendants in this case. Does the Court have any questions before I begin? Go ahead. I have a question for you. Yes. Although I realize this case is probably controlled by procedural issues, I would like to hear a little bit about the merits of the underlying claim from your perspective. Yes, Your Honor. With respect to the underlying claim, the appellee plaintiff has three claims. The first one is for Title VII violations on a basis of a number of protected characteristics. There's no merit to that claim because it is time-barred, as she failed to exhaust her administrative remedies timely with the EEOC or the Nevada Equal Rights Commission. Did she file anything with the EEOC? No. Never. Pardon me, Your Honor. No. Okay. The other two claims are a claim under Section 1983, and there's no merit to that claim because these are private parties. There is no State action, no action under color of law. The third claim is under 1985 for conspiracy, and I believe in the great American Novotny case, the Court held that a 1985 claim cannot be premised on a Title VII violation the way that she has pled her claim. So if the appellee, the appellant in this case, had simply timely filed an opposition, we believe a ruling on the merits would have dismissed this case. Those same claims But, I mean, one of the things that I understand that you had a meritorious venue change motion, but why make it? Why just not get rid of the case? We attempted to. We did file a motion for change of venue. And he wasn't — which led to a lot of the confusion here because he wasn't a Nevada lawyer, and what was the point? Venue's not jurisdictional. All you had to do was get rid of the case. Well, we attempted to do both. We both filed a motion for change of venue and in the alternative. I understand you did, but why? It just prolonged and ran up fees for no apparent reason. Well, because we believed the venue wasn't proper in California. Good. Well, that's fine. It wasn't — it wasn't proper, but so what? It's not jurisdictional. If you have an absolutely unmeritorious case, just get rid of it. We had done both, Your Honor, both motion to change venue as well as the merits. And the California district court — On the motion to dismiss. So you filed a motion to dismiss in California. Yes. And there was no response. Is that correct? Initially, that is correct. The time came and went a week after the deadline for the opposition. Notice of non-opposition was filed with the court pursuant to the California local court rules, which are similar to the Nevada court rules. There's a provision that says a failure to timely file appoints and authorities in opposition may be deemed a consent to granting. However, in that case, the appellant then did file a request for extension of time. The California district court allowed an opposition, I believe, or would have given time, but the court just went ahead and ruled on the merits. All right. Not on the merits. Sorry. On the motion to change venue. Okay. Now, with regard to the Nevada, right, the district court, there were, what, a couple of weeks between when they were supposed to have filed and when it was dismissed. Yes. Right about two weeks. And they claimed that they did file a motion for extension of time. Well, we don't claim it very well because the declaration actually says it was an opposition and it wasn't an opposition. But there was a declaration saying they filed an opposition, or they filed something by mail after they couldn't file it directly. And the district court then just dismissed it and wouldn't ask to reconsider. And given this information about the fact that something was filed, just pretty much ignored that. In fact, Your Honor, the district court's order did include and address the fact that the plaintiff appellant had claimed to have made an attempt to paper file and to have mailed filing, a filing for an extension for request for time to the court. However, we as the defense counsel never received service or a copy of anything that was allegedly mailed. We never received a phone call from the appellate plaintiff. Had they actually attempted to mail in service, should they not have also served a copy on us as the defense? They did not do so. We've never seen any such filing. The Court hasn't seen such filing. And that was specifically included in the Court's order denying the motion for reconsideration. Was there ever any contact between the plaintiff's lawyer and you or whoever was handling the case regarding an extension of time or the issues with service? No, Your Honor. I didn't receive any communications. And I am the lead counsel in Nevada. Is that in the record, that you never received any service or anything? That's correct. I never received service. Is that in the record, that you didn't? I don't think there was an — I don't believe there was a place in the underlying record, because I don't think we filed, as the defendants, anything once the Court received the court — the request for reconsideration. I believe the Court ruled pretty quickly. Okay. And so is your understanding that this was a sanction or was not a — or was based on a deemed-admitted theory? My understanding is, based on the plain reading of the Court's orders, is that this was a consent to the granting of dismissal based on our local court rule. And it's not permissive. It says that the failure to file appoints in authorities shall be — shall be a consent to the granting. But under our case law, we nonetheless run it through the sanction standards, right? Yes. The five-factor test, Your Honor. Yes. So it's essentially as if it were a sanction. Yes. And so why do the standards for sanctions apply here? I think they apply because at least three of the factors strongly favor dismissal. The five factors, of course, include that the public's interest in expeditious resolution of litigation, and we have case law that says that that always weighs in the favor of dismissal. Similarly, the Court has to manage its docket. And the court — the district court is in the superior position to determine what is necessary and appropriate as a sanction, and that the court will look to whether there is any clear error in the court's determination that that's the appropriate  The third factor is, I think, where there is the most discussion or dispute, and that's whether there's any prejudice to the defendants in the case. So do we look — so we consider the fact that there's a weakness of the underlying case? Well, while generally the court does not look to the underlying merits, the court may do so, and I think this is an appropriate case to do so because even if the court remands it back to the district court, we're going to rebrief for a third time, then, the substantive merits of the motion to dismiss, because that has still — Well, not necessarily. You've briefed it. They've opposed it. He just has to read them. What — they actually haven't ever opposed it in the Nevada district court. I thought they did, in fact, file an opposition eventually. No, they filed just a motion for extension of time. But I thought after, with the motion to — I thought at some point they filed an opposition. Not in the Nevada court. No? No. I guess he said, I need three days or something like that. Okay. Anything else? Unless you have no — are there any other questions for me, Your Honor? No questions here. All right. Thank you, Your Honor. Thank you. Yes, sir. Do you have anything? I have nothing additional to say. Well, I have a question. Is there any chance that he could prevail in the merits of this case? Is there any chance that you could prevail in the merits of this case? What did your opposition say that you didn't file? Is there any chance that we could prevail? Yes. I mean — Yes, I think so. On what basis? If you didn't file in the Title VII documents and it's not a 1983 case, then what is it? That's what I was just looking up. When she said that about the EEOC, I believe — Yes, she said that repeatedly. It's not true? I'm not sure. I just — Well, you've never questioned it before. It's been in the briefs all along. I think that — I need to check with Ms. Mays. I do believe that that occurred. I do believe that we could prevail. I do believe that — Well, exactly why? Tell me in one sentence, one thing you could prevail on. We haven't — no discovery has ensued. But you don't have a case. I mean, that's what I don't understand. It's definitely not a 1983 case. It's not a 1985 case. I understand. And if she didn't file anything, it's not a Title VII case. I understand what you're saying, Your Honor. That's why I was attempting to look up — I mean, it's just irritating to be spending — I mean, my own sense is that procedurally, maybe this is questionable, but what are we doing here? I understand. All right. Thank you very much. Thank you, Your Honors. The case of Mays v. Smart and Final is submitted, and we will go — the next case, Marks v. Santa Rosa City Schools, has been submitted on the briefs, and we'll go to Global Linquist Solutions v. Zurich American Insurance Company and Zurich American Insurance Company v. Abdelmegid.
judges: Gould, Berzon, Marquez